The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, everyone. We're delighted to be finishing up our week here in Pasadena, and we are especially grateful to have with us Judge Hamilton from the Seventh Circuit. Thank you for being with us this week, Judge Hamilton. My pleasure. Thank you. The cases will be called in the order listed on the docket. The first four cases on the calendar, Leonis Bonilla v. Bondi, Alice Priza v. Bondi, Fayeda Elver v. Bondi, Ferrer Rodriguez v. Bondi, have all been submitted on the briefs. Our only case on calendar for argument today is Brauer v. ExamWorldWide, Inc. Counsel for appellant, please approach. Good morning, Your Honors. May it please the Court. David Carpenter on behalf of defendants and appellants, ExamOne and Quest Diagnostics. I'd like to reserve two minutes for rebuttal. All right, Counsel. Thank you. Please be reminded that the time shown on the clock is your total time remaining. Understood. All right. Thank you, Your Honor. This appeal arises from an order certifying two classes comprising potentially tens of thousands of people without evidence of actual injury to anyone beyond the named plaintiff. As to the accuracy class, the district court explicitly found that the class criteria and the testimony from plaintiff's expert did not establish a prima facie case or presumption of inaccuracy in any given report. Because actual inaccuracy is an element of a prima facie claim and there is no common proof or representative proof to establish that on a class-wide basis, individualized issues necessarily predominate, and class certification was improper, as in small. Counsel, let me just understand what your argument is. In terms of the inaccuracy issue, was a finding made that for the lead plaintiff, there was inaccuracy established? He established inaccuracy through his own individual testimony.  Right. So that's not enough for a prima facie case? For his individual prima facie case, it is. For the prima facie case for the absent class members, it is not. So maybe I'm mistaken, but I thought that the cases say that if the lead plaintiff establishes a case, then the time to look at whether the class members can establish a case is at summary judgment stage. So let me distinguish two things. So there's liability on one hand and there's Article III standing on the other. So I think Your Honor is referring to a case saying that for subject matter jurisdiction, Article III standing can be shown by the lead plaintiff. Now that case actually arises, that's DZ, that's really about injunctive relief. But the relevant inquiry at Rule 23 is whether individualized issues are going to predominate. Correct. So if the absent class members need to establish their own standing by summary judgment, then at class certification, you at least need to ask whether individualized inquiries are going to be needed for them to establish Article III standing down the road. Right. If those individualized inquiries are necessary, then you can't satisfy your burden for predominance at the Rule 23 stage. I understand all of that. And so you're saying that because the district court found that the expert testimony was not sufficient to establish a prima facie claim of inaccuracy for the class, then that means that individualized determinations would be required. Right, because you need to do basically a file-by-file review of the individual medical records to know whether or not there is an inaccuracy. And that had been done with regard to the putative plaintiff, right? You had to look at his medical record and determine whether or not a pediatrician had prescribed a medication that could have been used by an adult or by a child. Correct. And that only came out through his individual testimony and explanation. And so your position is you'd have to do the same thing with regard to any other putative class? For all 20,000 putative class members. Otherwise, you don't know whether or not they suffered any injury. Counsel? Yes. Was your answer yes? The answer to that is yes. Okay. Judge Hamilton. So it's pretty well established that individualized damages, calculations, and proof do not defeat a B3 class. How does the inquiry that you're describing differ from that? Understood. So this court's precedents distinguish between individualized damages and the fact of injury in the first place. And if there is individualized proof necessary to show the fact of injury, then that defeats predominance even if it's common policy. So small v. Oh, I'll stop if you're going to ask me. So small v. Allianz is a great example of that. That's where there was a failure to provide notice of insurance lapse. But the injury, depending on whether the insurance actually lapsed, and that was an individualized inquiry. Ambrosio is a similar thing. That's a recent decision in 2025 where they specifically said, yes, you are challenging a common appraisal policy. But whether or not that appraisal policy resulted in underpayment for any individual insured, that's an individualized question. That sounds to me an awful lot like a damages inquiry. So help me on this. Absolutely. So let me actually take this into shoddy experience. That is the case talking about what a prima facie inaccuracy claim looks like on the substance of your 1681EB. And Shaw says, quote, or the plaintiff, quote, must first make a prima facie showing of inaccurate reporting. This court echoed that similarly in Gross v. City Mortgage where the court said if there is no inaccuracy, reasonableness is, quote, not in play. Okay, apply that to this case. Has there been a showing of inaccuracy at least for one person? At least for Brower, yes. But that doesn't mean that you would have liability as to any other putative class member. And what Shaw really shows is if this is brought in an individual claim, the first thing that individual claimant needs to do is show the inaccuracy in their own report. And if they can't show that they don't have a prima facie claim in the first place, it's not merely a question of calculation of damages. And I think that in Small, if I remember correctly, the question was whether or not the insureds intended their policies to lapse because they had stopped making payments as the premiums rose. And the only way you could tell whether or not they so intended would be to examine each individual claim file. Correct. Go ahead. I think Small is very similar to this case because the threshold issue they asked in Small was what is the violation? Is the violation just the failure to provide notice full stop or is the violation a failure to provide notice plus causation? And what Small said first is we actually say it's violation plus causation. That is parallel to what we have here established in Shaw. Which is not just a failure to use reasonable procedures. It's there has to be an inaccuracy that flows from the unreasonable procedures. Counsel, would you please point me to the language in Shaw that will help me to get the point that the class, that there has to be a showing on the part of the absent class members of the inaccuracy. Point me to the language in Shaw that tells me that. Okay. So Shaw is an individual case. Okay. And so we start in the classification inquiry by identifying what the substantive elements are. Right. And then we apply the rule 23 principles. Right. But that doesn't help me. If Shaw is an individual case, to me that doesn't stand for the proposition that the absent class members have a separate obligation. So that's why I'm curious as to what language in what case tells us that the fact that the lead plaintiff has shown an inaccuracy is not sufficient for the absent class members. I want some language from a case that tells me that. Okay. Understood. Well, once we start with Shaw that the prima facie claim on an individual basis requires inaccuracy. Then you actually go back to. Have that here. Right. But then you go back to Walmart v. Dukes, which is that the class action mechanism can't alter the substantive elements of the claim. So each individual class member still has the same substantive elements to their individual claim. But is that required before class certification, though? That's kind of the disconnect I'm seeing with your argument. Understood. So what's required before classification is them to satisfy the elements of Rule 23 by a preponderance of the evidence. Right. That's only in that's Halliburton. They need to present that evidentiary proof at the Rule 23 stage. So they need to show at this stage that they have a form of common proof or representative proof to show the inaccuracies for every class member down the road. They don't have that form of common proof or representative proof. What do you think it would take given the – we're talking about millions and millions of files here, right? And the plaintiff's expert looked at about 100,000 of them. What do you think it would take to show a reasonable basis for enough of these pediatric type errors to go forward on a class basis? I don't know what it would take in a kind of hypothetical situation. I know it's not here because the district court expressly held – That's not really what I'm asking. Okay. Look, this case is part of a larger debate about – we had the LabCorp case before the Supreme Court last year. This court has its precedence on, in essence, how many uninjured class members you can have and still certify a class. Now, admittedly, on this record, we're kind of out at one end beyond that spectrum. Okay, I get that. But I want to understand if we were to agree with you what we might say about this, about what could be sufficient through this kind of sampling method. So Tyson is clear that if you have a representative form of proof, you can have representative sampling that will allow you to certify a class as long as it's the type of representative evidence that could be used in any individual case. We don't have that here because for Brower, he's not relying on any form of representative proof to prove his individual case. He's relying on his own individual testimony. So if there is a Tyson situation where there is a form of representative sampling or proof that could be used for individuals to make it more likely than not that there was an inaccuracy, that might be a certifiable class. I'm realizing I'm getting close. Do you want me to address the sources class? Yes, please. Okay, thank you. On the sources class, Telford and Robbins v. Spokio and his progeny establishes a two-step inquiry. The first is whether the statute generally exists to protect concrete interests. But the second step is the critical one, whether the specific violation alleged here actually creates harm or a material risk of harm. The specific violation alleged here is the failure to automatically identify the PBM as the source of information in the report whenever a report is sent to a consumer. Your client was basically not doing that for anything, right, for a number of years. If it was asked, it would send the source information, but not automatically. Not automatically. But the statute does require it, correct? We understand that the statute has been interpreted to require it. The ambiguity is when there's a request for the file you send it, here people would say, can you please send me what you sent my insurance company? And so exam one would say, here you go, here's the report. That's what has been interpreted to say even that request triggers the automatic. Would it be fair to summarize your argument as saying that at least the statutory damages provision of the Fair Credit Reporting Act here would be unconstitutional as applied without proof of more than this procedural violation? Correct. Without some indication of an inaccuracy or some other issue that has to be addressed. I don't want to say that the statutory provision is unconstitutional as applied. It's just that you need to be in the court. You need to show the downstream effect that you're actually affected. The statute requires you to show that effect to get the statutory damages award. Correct. And that's consistent with TransUnion and Spokio. I see that I'm into my rebuttal time. All right. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the court, Jim Francis for the appellee, Lars Brower. The district court did not abuse its discretion in granting class certification in this case, and its ruling should be affirmed in its entirety. To the contrary, the district court faithfully followed this court's precedent in Olien v. Bumblebee, an en banc decision relating to class certification, and Telford v. Experian Information Solutions, which is the case which establishes Article III injury for a denial of Fair Credit Reporting Act information that's required by Section 1681G. But the district court's—the soundness of the district court's ruling was only reinforced when a panel of this court about a month ago ruled in Healy v. Milliman, a case with very, very similar, strikingly similar facts, and the identical claim against Exam 1's biggest competitor, Milliman. In that case, even though that it was at a summary judgment stage, this court held that inaccuracy, class-wide inaccuracy, can be proven, or indicia of inaccuracy, can be proven by facially incongruent data points and data sets. In that case, it was— Counsel? Yeah. What do we do with the district court's finding—was it Mr. Jaffe? Was that your expert's name? Yes, Your Honor. Mr. Jaffe's sample did not uncover any additional violations or harm to the other putative class members. Oh, I don't think that's what happened, Your Honor. What Mr. Jaffe said and what the court found was that Mr. Jaffe himself, at the class certification stage, wasn't opining as to whether these are definitely inaccuracies. What he was saying was they meet this profile, just like Lars Brower, of an adult having a pediatric high-risk medication on his or her report, which is incongruous to begin with, but putting aside that— It's not incongruous if some of the medications, say antibiotics, for example, could be prescribed both for adults and for children by a doctor who may specialize in pediatrics or internal medicine or both. Well, we think, Your Honor, that what the court was saying with regard to Mr. Jaffe was the court wasn't wading into the merits of the cases. Judge Rawlinson, I think you were asking my colleague about, which is all that the district court was doing was looking at class certification and was being very reserved and careful not to wade into the merits of the case. But I just want to be clear here. It hasn't been discussed so far. There are five different evidentiary bases from which this court could find class-wide evidence. First, in the third full paragraph of the court's decision, it identifies three separate types of evidence which establish that Exam 1 has inaccuracies in the reports. She cites to an internal memo where they mention script check errors. So we know script check has errors that some of the reports are erroneous. Next, she cites that Exam 1 admits that the cause of most of the errors in script check reports are misattributions, meaning somebody else's prescription is showing up on the life insurance applicant's report. But she doesn't stop there. She looks at another policy memo, which indicates that Exam 1 knows that for cases involving spouses and children under the age of 26, their prescriptions are being included on the report of the life insurance applicant or the primary insured. So those are three separate cites and references to class-wide evidence. Every single person in the class, and Mr. Brower himself, will cite that as evidence of an error, but it doesn't stop there. She seems to suggest, I'm looking at ER 19, it's page 18 of the court's order, down at line 22 or there. Basically, she's saying we're going to have to wait until discovery to determine whether or not there are errors, basically, in the other reports. And that seems to turn our case law on its head that says that the plaintiff can't discover its way into establishing Article 3 standing. It has to show at the onset that there is standing. And Mr. Jaffe didn't offer an opinion as to whether any of the other class members had actually suffered the same injury that Mr. Brower suffered. I understood, Your Honor. I think a couple things there. First, in terms of Article 3 standing, that's its own analysis. Mr. Brower has it for both claims. That's enough for standing at this point of litigation. Putting that aside, I think what Your Honor was asking about was proof of inaccuracy. Right. That's the injury. Right. The proof of inaccuracy has to be the injury. Well, the injury here, right, is having negative health information reported about you, which comes from the restatement of torts. And in Mr. Brower's case, it was, I guess, medicine that was prescribed for a minor child, but it was attributed to him on the report. Correct. High-risk medications for his newborn son. Mr. Jaffe can't say that about any of the other proposed putative class members. What we can say and will say, and I'll just remind Your Honor, we haven't had merits discovery yet. But that gets back to my concern. You can't discover your way into establishing injury. You've got to have a prima facie showing that there's injury, and that's what I'm struggling with. I don't see that showing here. I understand, Your Honor. I think the showing is at the class certification stage, exam one acknowledges they have this problem with errors on reports due to children's prescriptions being reported on adult life insurance applicants' reports. Right. They acknowledge that problem. So we know that problem exists. So then we hired Mr. Jaffe to say, tell us all of the times where that profile exists. And he was able to do that. He was able to find over 20,000 instances in which his same profile, an adult who was applying for life insurance, has medications of a child or written by a pediatrician on his or her report. That creates a presumption of inaccuracy for the class. Where do you get that? Where's the presumption? The presumption is the evidence of the problem that they know that exists. Maybe an inference might be a better word. Yes, Your Honor. I think, Your Honor, you're absolutely right. And this court held in Healy v. Milliman over a month and a half ago that that type of inference was appropriate to defeat summary judgment. That's beyond class certification. Healy is directly on point. If the evidence of misattribution or conflicting Social Security numbers in Healy v. Milliman was enough to defeat summary judgment, it's certainly enough to satisfy a preponderance of the evidence that the elements of Rule 23 are met here, which the district court did find. I guess I could follow your reasoning, were it not for the fact that a doctor can have multiple specialties. You can be an internal medicine doctor but also do pediatrics. And I think your answer assumes that a pediatrician treats solely children and an internist maybe treats both. But the problem is that you can't tell without looking at the individual record what the circumstances were with regard to a particular prescription. That's a great question, Your Honor. First, the class definition excludes people with multiple specialties. It's only specializing in pediatrics. So those individuals with multiple different specialties, they wouldn't be included. Counsel, I had a father-in-law who was a pediatrician. He prescribed medication for me when I was an adult. He made house calls for me. So I'm not sure that solves the problem. Your Honor, I think, as the merits discovery will show, that is a very unusual situation. So we're now in the de minimis sliver. Well, I don't know if we are or not. And Mr. Jaffe can't help us on that because he didn't take that second step. Well, Mr. Jaffe can't opine on the taxonomy of physicians and whether or not pediatricians prescribe medication to adults. That is something that is a merits question that we haven't gotten to yet. Well, it's a merits question, though, that goes to whether or not deputative class members have suffered an injury. That's what I'm wrestling with here. It seems to me that maybe the district court pulled the trigger a little too fast and did not do the kind of rigorous analysis that the Supreme Court tells us in Dukes and so on that district courts must do in making these types of certification decisions. I think the district court did the right analysis for a class certification evaluation, but it certainly resisted wading into the merits because we haven't had merits discovery yet. So the question was, is there a way to tease out these class members who have an inaccuracy? And that's what the Jaffe report does, is it says, here are 20,000 instances of this exact same fact pattern playing out. Now, it might be true, as Your Honor just indicated, maybe there were a couple of people in there whose parents were pediatricians who were prescribing them medication when they were adults. We can find that out when we get discovery from the PBMs. We're not there yet. But, so, counsel, your position is the evidence that's in the record now mirrors the situation of the lead plaintiff that established an inaccuracy. So the information that's there is close enough to the facts in his case that an inference can be drawn that this class-wide proof is available. Exactly, Your Honor. You stated it better than I have and probably could. That's exactly what we're saying. And then what happens is, under the burden of proof, the burden shifts to the defendant when we have, we've proven an indicia of inaccuracy, I think is the word that Your Honor used. And then they can come back and say, not true for this person, not true for that person. They haven't done that because we haven't gotten into that yet. But, yes, Your Honor, the whole point of the Jaffe Report is simply to identify the exact same scenario playing out 20,000 different times. All the district court was doing with some of the language that the defendant capitalizes on was when the court was withholding or reserving judgment on the merits. Do we have any basis, Mr. Francis, for quantifying among these 20,000 files which are likely to reflect a substantive inaccuracy as opposed to a perfectly innocent one? Yes, Your Honor. The class definition only includes people for whom there was a risk score above zero. So what that means is it's a high-risk medication that's likely to result in a denial of life insurance. Okay. Well, I'm not sure that that answers that question, but do you see a possibility that the district court identified of possibly a narrower class definition that might be tailored more closely to actual inaccuracies? Well, I think after the merits and merits discovery, which includes the data from the PBMs that we don't have yet, right? That's one of the things that will occur when in merits discoveries we'll get the data from the sources. And, by the way, it's not every pharmacy. It's five PBMs. They have all the prescription data from all the pharmacies in the country. That's a very sobering point for all of us who are consumers and patients. It's surprising, Your Honor. We learned a lot in this case about how it works. But, yes, there are five companies which aggregate that data and then sell them to companies like Milliman and Exam One. But going back to Your Honor's question, I tried to answer it. The class definition only involves high-risk medications that would cause a denial. So it's not like antibiotics. It's not something minor or something that really is of no moment. I see that my time is running. Did you want to address the sources? I do. Thank you, Your Honor. As I indicated earlier, we have a case from this court directly on point for this claim. It's Telford v. Experian Information Solutions. In Telford, this court held that when a consumer reporting agency denies statutorily mandated information under Section 1681G to a consumer, that, A, that's a concrete interest that the consumer has, and, B, it creates an automatic injury to that interest because part of the purpose for Section 1681G was to give consumers privacy rights, to know who has my data, what are they doing with it, can I challenge it, do I need to challenge it. As the Third Circuit held in Kelly v. Realpage, a consumer can't know ex ante what's in their file if they're not provided it. So this notion that somehow you have to be able to prove what you would have done with the information, first of all, it contravenes Telford, and it would make it impossible for a consumer to exercise their privacy rights under Section 1681G. The whole idea is, who has my data? You're supposed to tell me. You're not telling me. That deprivation alone creates injury. If the court has no further questions, I respectfully request and urge that it affirm the district court's class certification decision. Thank you, Your Honor. Thank you, counsel. Rebuttal. Thank you, Your Honor. Let me go in reverse order to start with the sources in Telford, and then I'll go to the accuracy class unless the panel would like me to do something any different. That's fine. Okay. So I want to be clear on Telford. Telford does not hold that a statutory violation by itself automatically causes injury. It might satisfy the first step, but you have to go to the second step to show why this specific violation at issue causes it. In Telford, what they said is there's a violation because the withholding of the information inhibited the class member's ability to exercise opt-out rights. That's what the actual deprivation was at Telford. How is that different from a class member not being able to know why they were denied life insurance? So two points there. One, we don't know that people were all denied life insurance here. But two, they can see on their report all of the prescription information. They can see all of the providers. They can see all of the pharmacies at which the prescriptions were filled. They have all of the information at hand to identify whether or not an error or other inaccuracy or issue exists. Their statutory violation is purely a failure to identify the PBM as the source of the information. If you have an inaccuracy or issue in your report that you need to correct, then needing the PBM might be relevant, among other things. So you're saying that the source doesn't have to be provided even though the statute says it does? I'm saying that absent some downstream effect, that's transunion or adverse effect, there is no Article III standing if you were not affected by the denial of a source in a report that is otherwise completely accurate and indeed in a situation where you might not have even been requesting the sources. All right. Thank you, counsel. Any other questions? Thank you to both counsel for your helpful arguments. The case is submitted for a decision by the court and we are adjourned. All rise.
judges: TALLMAN, RAWLINSON, Hamilton